1  H. STAN JOHNSON, ESQ.                          **E-Filed on March 19, 2010**
   Nevada Bar No. 0265
2  CJD LAW GROUP, LLC
   6293 Dean Martin Drive, Ste. G
3  Las Vegas, NV 89118
   (702) 823-3500
4  Attorneys for Debtor

5

6                    **UNITED STATES BANKRUPTCY COURT**

7                          **DISTRICT OF NEVADA**

8

9  In Re:                              )      Case No. 10-11424-bam
                                       )      Chapter 13
10 JULIE R BLOUNT,                     )
                                       )
11         Debtor.                     )      Hearing Date:      4/22/10
                                       )      Hearing Time:      2:30 p.m.
12 _____ )
                                       )
13

14   **MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF
        LIENHOLDER PURSUANT TO 11 U.S.C. 506(a) AND 1322**

15       Now Comes, JULIE R BLOUNT (hereinafter the "Debtor"), by and through her attorney,

16 H. STAN JOHNSON, ESQ. of CJD LAW GROUP, LLC, and move this Court pursuant to 11

17 U.S.C. 506(a), and 1322, and Bankruptcy Rules 3012 and 9014 and states:

18                                **JURISDICTION**

19      The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1334 and 28 U.S.C. 157.

20           **MEMORANDUM OF POINTS AND AUTHORITIES**

21                                    **I.**

22                            **STATEMENT OF FACTS**

23
24 1.    On January 29, 2010, Debtor filed a Voluntary Petition under Chapter 13, Title 11, of the
25       United States Code, case number 10-11424-BAM.

26 2.    In her petition, Debtor listed her home which is located at 5030 Stormy Circle, Las Vegas,
27       Nevada 89119 (hereinafter referred to as "home"), with a value of $152,500, and a
         mortgage balance totaling $248,911.68.
28

3.   However, upon further investigation and an actual appraisal, the home is valued at $95,000. (See Appraisal of John L. Green attached hereto as Exhibit 1).

4.   At the time of filing, the home was encumbered by a first mortgage with Wells Fargo Bank, N.A.  That mortgage has a balance of $95,620.82.  (See Proof of Claim filed by Wells Fargo Bank, N.,A., hereinafter referred to as "Wells Fargo", dated February 23, 2010, attached herein as Exhibit 2).

5.   On the petition date, Debtors owed money to Beneficial Mortgage as a second lien on the home in the amount of $151,411.68, identified in Schedule D in Debtors' petition.

6.   Based on the appraisal (Exhibit 1), the home value of $95,000, less the first mortgage balance of $95,620.82, results in negative equity, or <u>no</u> equity upon which Beneficial Mortgage's second claim could attach.  (See Exhibits 1 through 2)

7.   Beneficial Mortgage's second claim is wholly unsecured and if the home was sold at auction Creditor would receive nothing.

8.   Accordingly, the Debtor requests that this Court find that the second claim of Beneficial Mortgage  is unsecured and should be reclassified as a general unsecured claim to receive pro rata with other general unsecured creditors through the Debtor's Chapter 13 plan.

## II.

## <u>LEGAL ARGUMENT</u>

In *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002), the Court stated that a wholly unsecured

lien holder's claim can be modified and reclassified as a general unsecured claim pursuant to

11.U.S.C. 506(a), despite the anti-modification language in 1322(b)(2).  Specifically, the Court

held:

> Section 506(a) divides creditors' clams into "secured...claims" and "unsecured claims". Although the conventional interpretation of "secured" might include any claim in which the creditor has a security interest in the debtor's property, 506(a) makes clear that the status of a claim depends on the valuation of the property.  And allowed claim of a creditor secured by a lien of property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property .. And is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.
> ...
> To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it.  Under the Bankruptcy Code, "secured

1    claim" is thus a term of art; not every claim that is secured by a lien on property will be
     considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment
2    of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust,
     and the value of the loan secured by the first deed of trust is greater than the value of the
3    house.

4

5        Accordingly, since the second claim of Beneficial Mortgage is wholly unsecured (in that

6    there is no extant equity above the first mortgage in the home), this Court should reclassify said

7    claim to a general unsecured claim to receive pro rata with like unsecured creditor.  Beneficial

8    Mortgage's second claim should also be stripped of its secured rights under State law since no

9    maintainable security interest in the subject property exists.

10

11       Further, the Debtor is not required to file an adversary proceeding to achieve the requested

12   relief herein.  Debtor may bring a motion to "strip off" Beneficial Mortgage's consensual lien by

13   motion. See *In re Williams*, 166 B.R. 615 (Bankr.E.D.Va.1994), *In re Fuller*, 255 B.R. 300

14   (Bankr.W.D.Mich.2000), *In re Hoskins*, 262 B.R. 693 (Bankr.E.D.Mich.2001), *In re King*, 209

15   B.R. 641 (Bankr.C.D.Ill.2003), *In re Millspaugh*, 302 B.R. 90 (Bankr.D.Idano 2003), *Dickey v.*

16   *Ben. Fin. (In re Dickey)* 293 B.R. 360 (Bankr.M.D.Pa.2003), *In re Hill*, 304 B.R. 800

17   (Bankr.W.D.N.Y.2003), *In re Robert*, 313 B.R. 45 *(*Bankr.N.D.N.Y.2004*)*, *In re Bennett*, *312* B.R.

18   843 (Bankr.W.D.Ky.2004).

19

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

## CONCLUSION

WHEREFORE, Debtor prays as follows:

1.   Find that Beneficial Mortgage is not a holder of a second lien on the home;

2.   Immediately avoid, "Strip Off", cancel and extinguish Beneficial Mortgage's wholly unsecured claim/lien from the home pursuant to 11 U.S.C. Section 506(a);

3.   Reclassify Beneficial Mortgage's second lien claim as a general unsecured claim to be paid pro rata with other general unsecured creditors through the debtor's Chapter 13 plan;

4.   Such relief the Court finds appropriate.

DATED this 19th day of March, 2010.


CJD LAW GROUP, LLC


By:     /s/ H. Stan Johnson
        H. STAN JOHNSON, ESQ
        Nevada Bar No. 0265
        6293 Dean Martin Drive, Ste. G
        Las Vegas, NV 89118
        Attorneys for Debtor

1
2
3
4
5
6
7
8
9
10  H. STAN JOHNSON, ESQ.
    Nevada Bar No. 0265
11  CJD LAW GROUP, LLC
    6293 Dean Martin Drive, Ste. G
12  Las Vegas, NV 89118
    (702) 823-3500
13  Attorneys for Debtor
14
15              UNITED STATES BANKRUPTCY COURT
16                    DISTRICT OF NEVADA
17
18  In Re:                    )    Case No. 10-11424-bam
                              )    Chapter 13
19  JULIE R BLOUNT,           )
                              )
20        Debtor.             )    Hearing Date:    4/22/10
                              )    Hearing Time:    2:30 p.m.
21  _____  )
                              )
22  **[PROPOSED] ORDER REGARDING DEBTOR'S MOTION TO VALUE COLLATERAL,**
23  **"STRIP OFF" AND MODIFY RIGHTS OF LIENHOLDER PURSUANT TO 11 U.S.C.**
    **506(a) AND 1322**
24
25       THE ABOVE MATTER having been heard at the time and date above the Court finds as
26  follows:
27
28

1       1.     The Debtor's property located at 5030 Stormy Circle, Las Vegas, Nevada 89119 is

2             valued at $95,000.

3       2.     That on the filing date of the instant Chapter 13 Petition, Beneficial Mortgage's

4             claim was wholly unsecured.

5      IT IS THEREFORE ORDER THAT Beneficial Mortgage's secured claim is "Stripped off"

6

7  and shall be avoided pursuant to 11 U.S.C. Section 506(a);

8      IT IS FURTHER ORDERED THAT Beneficial Mortgage's secured rights and/or lien-

9  holder rights in the subject property are hereby terminated.

10      IT IS FURTHER ORDERED THAT the secured claims of Beneficial Mortgage be

11  reclassified to general unsecured claims to be paid pro rata with other general unsecured creditors

12  through the Debtor's Chapter 13 Plan.

13

14      IT IS FURTHER ORDERED THAT in the event that Debtors Chapter 13 case is dismissed

15  or converted, the rights of Beneficial Mortgage in being a secured creditor will be restored.

16  Respectfully submitted,

17  CJD LAW GROUP, LLC

18

19  /s/ H. Stan Johnson, Esq.

20  H. Stan Johnson, Esq.
     Nevada Bar No.: 0265

21  6293 Dean Martin Drive, Ste. G
     Las Vegas, NV 89118

22  Attorney for Debtor

23

24

25

26

27

28

1

2

3

## ALTERNATIVE METHOD REGARDING LOCAL RULE 9021:

4

In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

5

___ The court has waived the requirement of approval under LR 9021.

6

7

8

___ This is a Chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

9

10

11

___ This is a Chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

12

13

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

14

APPROVED / DISAPPROVED

15

16

_____

17

Rick A. Yarnall, Trustee
701 Bridger Ave., #820
Las Vegas, NV 89101

18

19

APPROVED / DISAPPROVED

20

21

_____

22

Gregory L. Wilde, Esq.
WILDE & ASSOCIATES

23

208 South Jones Boulevard
Las Vegas, NV 89109

24

Attorneys for Wells Fargo Bank, N.A.

25

26

27

28

# EXHIBIT 1

American Home Residential Appraisers (702) 644-6330

VALUATION

Main File No. 1008229 Page #2

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 1008229

## SUBJECT

| | | |
|---|---|---|
| Property Address: 5030 STORMY CIRCLE | City: LAS VEGAS | State: NV    Zip Code: 89119-2244 |
| County: CLARK | | |
| Legal Description: VICTORIA VILLAS SUB #1 PLAT BOOK 27 PAGE 83 LOT 18 BLOCK 1 | | |
| Assessor's Parcel #: 162-26-516-002 | | |

Tax Year: 09/10    R.E. Taxes: $ 1,337.49    Special Assessments: $ 0.00    Borrower (if applicable):  BLOUNT

Current Owner of Record:  BLOUNT    Occupant: ☒ Owner    ☐ Tenant    ☐ Vacant    ☐ Manufactured Housing

Project Type:  ☐ PUD    ☐ Condominium    ☐ Cooperative    ☒ Other (describe) SINGLE FAMILY    HOA: $ N/A    ☐ per year    ☐ per month

Market Area Name:  VICTORIA VILLAS    Map Reference: 65-D3    Census Tract: 0027.06

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of:  ☒ Market Value (as defined), or  ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments):  ☒ Current (the Inspection Date is the Effective Date)    ☐ Retrospective    ☐ Prospective

Approaches developed for this appraisal:  ☒ Sales Comparison Approach    ☐ Cost Approach    ☐ Income Approach    (See Reconciliation Comments and Scope of Work)

Property Rights Appraised:  ☒ Fee Simple    ☐ Leasehold    ☐ Leased Fee    ☐ Other (describe)

Intended Use: CJD LAW GROUP, LLC

Intended User(s) (by name or type):  CJD LAW GROUP, LLC

Client:  CJD LAW GROUP, LLC    Address:  6293 DEAN MARTIN DRIVE, #G, LAS VEGAS, NV 89118

Appraiser:  JOHN L. GREEN, NV LIC #A.0003366-RES    Address:  2305 HEAVENLY VIEW DRIVE, HENDERSON, NV 89014

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban | ☒ Suburban | ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | | Change in Land Use |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE | AGE | One-Unit | 70 % | ☒ Not Likely |
| Built up: | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | ☒ Owner 85% | $(000) | (yrs) | 2-4 Unit | 10 % | ☐ Likely *    ☐ In Process * |
| Growth rate: | ☐ Rapid | ☐ Stable | ☒ Slow | | | | Multi-Unit | 5 % | * To: |
| Property values: | ☒ Increasing | ☐ Stable | ☐ Declining | ☐ Tenant 15% | 60 Low | 10 | Comm'l | 10 % | |
| Demand/supply: | ☐ Shortage | ☐ In Balance | ☒ Over Supply | ☒ Vacant (0-5%) | 250 High | 50 | Vacant | 5 % | |
| Marketing time: | ☒ Under 3 Mos. | ☐ 3-6 Mos. | ☐ Over 6 Mos. | ☐ Vacant (>5%) | 100 Pred | 30 | | | PROPERTY VALUES HAVE DECREASED |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends):
IN THIS NEIGHBORHOOD AS DEMAND IS SHORT DUE TO THE OVER SUPPLY OF HOMES ON THE MARKET.  MARKETING TIME PER MLS
(10/31/2009) FOR THE SUBJECT AREA IS 59 DAYS WITH SALES AT 95% OF LISTING PRICE.  FINANCING IN THIS MARKET INCLUDES: GOV'T
LOANS AND ASSUMPTIONS.

## SITE DESCRIPTION

Dimensions: 42.0 X 126.0 (SEE ATTACHED PLAT)    Site Area:  5,257 SQ. FT.

Zoning Classification:  R-2/8 UNITS PER ACRE    Description:  SINGLE FAMILY DEVELOPMENT

Zoning Compliance:  ☒ Legal    ☐ Legal nonconforming (grandfathered)    ☐ Illegal    ☐ No zoning

Are CC&Rs applicable?  ☐ Yes ☒ No   ☐ Unknown    Have the documents been reviewed?  ☐ Yes  ☐ No    Ground Rent (if applicable) $           /

Highest & Best Use as improved:  ☒ Present use, or  ☐ Other use (explain)

Actual Use as of Effective Date:  SINGLE FAMILY RESIDENTIAL    Use as appraised in this report:  SINGLE FAMILY RESIDENTIAL

Summary of Highest & Best Use:   THE HIGHEST AND BEST USE OF THE SUBJECT PROPERTY IS ITS PRESENT USE:  FREE STANDING SINGLE FAMILY
- RESIDENTIAL

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | SLOPES TO STREET |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | PUBLIC/TYPICAL | Street | ASPHALT/TYPICAL | ☒ | ☐ | Size | TYPICAL FOR AREA |
| Gas | ☒ | ☐ | PUBLIC/TYPICAL | Curb/Gutter | CONCRETE/TYPICAL | ☒ | ☐ | Shape | MOSTLY RECTANGULAR |
| Water | ☒ | ☐ | PUBLIC/TYPICAL | Sidewalk | CONCRETE/TYPICAL | ☒ | ☐ | Drainage | APPEARS ADEQUATE |
| Sanitary Sewer | ☒ | ☐ | PUBLIC/TYPICAL | Street Lights | PUBLIC/TYPICAL | ☒ | ☐ | View | RESIDENTIAL |
| Storm Sewer | ☐ | ☐ | NONE/TYPICAL | Alley | NONE/TYPICAL | ☐ | ☐ | | |

Other site elements:  ☐ Inside Lot    ☐ Corner Lot    ☐ Cul de Sac    ☐ Underground Utilities    ☐ Other (describe)

FEMA Spec'l Flood Hazard Area   ☐ Yes ☒ No  FEMA Flood Zone    "X"    FEMA Map # 32003C2580E    FEMA Map Date  9/27/2002

Site Comments:   NO APPARENT ADVERSE EASEMENTS, ENCROACHMENT, SPECIAL ASSESSMENTS, SLIDE AREAS, ILLEGAL OR LEGAL
NONCONFORMING ZONING USES NOTED AT INSPECTION.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | AVE |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | ONE    ☐ Acc.Unit | Foundation | CONCRETE | Slab | CONCRETE | Area Sq. Ft. | NONE | Type | F.A.U. |
| # of Stories | ONE | Exterior Walls | STUCCO | Crawl Space | NONE | % Finished | N/A | Fuel | GAS |
| Type ☒ Det. ☐ Att. | | Roof Surface | COMP SHNGL | Basement | NONE | Ceiling | N/A | | |
| Design (Style) | 1 STORY | Gutters & Dwnspts. | NONE | Sump Pump | ☐ NONE | Walls | N/A | Cooling | AVE |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | STANDARD | Dampness | ☐ NONE | Floor | N/A | Central | REFRIG. |
| Actual Age (Yrs.) | 27 YEARS | Storm/Screens | NONE | Settlement | NONE | Outside Entry | N/A | Other | N/A |
| Effective Age (Yrs.) | 27 YEARS | | | Infestation | NONE | | | | |

| Interior Description | | Appliances | | Attic | ☐ None | Amenities | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|
| Floors | CPT/TILE/GOOD | Refrigerator | ☒ | Stairs | ☐ | Fireplace(s) # ____ | Woodstove(s) # ____ | Garage   # of cars ( 4  Tot.) | |
| Walls | PNT DWALL/GOOD | Range/Oven | ☒ | Drop Stair | ☐ | Patio | COVERED | Attach.  ☐ARA! 2 CAR | |
| Trim/Finish | PAINT GRADE/GD | Disposal | ☒ | Scuttle | ☒ | Deck | | Detach. | |
| Bath Floor | TILE/GOOD | Dishwasher | ☒ | Doorway | ☐ | Porch | COVERED | Blt-In | |
| Bath Wainscot | TILE/GOOD | Fan/Hood | ☒ | Floor | ☐ | Fence | CONC BLCK | Carport | |
| Doors | SOLID CORE/GOOD | Microwave | ☐ | Heated | ☐ | Pool | | Driveway 1-CAR MULTI CAR | |
| INTERIOR | INTERIOR: HOL-CORE/ | Washer/Dryer | ☒ | Finished | ☐ | | | Surface  CONCRETE | |

Finished area above grade contains:   6 Rooms   2 Bedrooms   2 Bath(s)   1,450 Square Feet of Gross Living Area Above Grade

Additional features:    THE SUBJECT HAS ENERGY EFFICIENT APPLIANCES, DUAL PANE WINDOWS AND SOLID CORE DOORS AT EXTERIOR.

Describe the condition of the property (including physical, functional and external obsolescence):    PHYSICAL DEPRECIATION IS TYPICAL FOR A HOME OF THIS
AGE.  NO FUNCTIONAL OBSOLESCENCE, NO EXTERNAL OBSOLESCENCE NOTED AT INSPECTION.  PHYSICAL DEPRECIATION CALCULATED
USING THE AGE LIFE METHOD AND INCLUDES THE APPRAISER'S OBSERVATIONS, NOTING RECENT UPGRADES.

**GP** RESIDENTIAL

Copyright © 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3/2007

VALUATION

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 1008229

## TRANSFER HISTORY

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): INTEREALTY/MLS

| | |
|---|---|
| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: THE SUBJECT HAS NOT PREVIOUSLY |
| Date: 02/17/1999 | SOLD OR LISTED IN THE LAST 3 YEARS. SALE #1 WAS LISTED ON 04/01/2009 FOR $99,900, WAS ON THE |
| Price: 112,000 | MARKET FOR 22 DAYS, AND SOLD FOR $90,000. SALE #1 PREVIOUSLY SOLD ON 03/05/2009 FOR $140,250, |
| Source(s): INTEREALTY/MLS | WHICH WAS A TRUSTEES DEED SALE. SALE #2 WAS LISTED ON 08/20/2009 FOR $99,900, WAS ON THE |
| 2nd Prior Subject Sale/Transfer | MARKET FOR 13 DAYS, AND SOLD FOR $100,000. SALE #2 PREVIOUSLY SOLD ON 04/16/2009 FOR $60,100, |
| Date: 01/31/1992 | WHICH WAS A TRUSTEES DEED SALE. SALE #3 WAS LISTED ON 03/28/2009 FOR $160,700, WAS ON THE |
| Price: 105,000 | MARKET FOR 121 DAYS, AND SOLD FOR $140,000. SALE #3 PREVIOUSLY SOLD ON 01/06/2009 FOR |
| Source(s): INTEREALTY/MLS | $90,500, WHICH WAS A FORECLOSURE SALE AND ON 06/01/2008 FOR $132,000, TRUSTEES DEED SALE. |

## SALES COMPARISON APPROACH

**SALES COMPARISON APPROACH TO VALUE (if developed)** ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 5030 STORMY CIRCLE LAS VEGAS, NV 89119-2244 | 5377 CLYDESDALE STREET APN 162-26-710-273 | | 5595 OXBO STREET APN 162-26-810-079 | | 5575 OXBOW STREET APN 162-26-810-077 | |
| Proximity to Subject | | .47 MILES SOUTHEAST | | .72 MILES SOUTH | | .69 MILES SOUTHWEST | |
| Sale Price | $ VALUATION | | $ 90,000 | | $ 100,000 | | $ 140,000 |
| Sale Price/GLA | $ N/A /sq.ft. | $ 58.67 /sq.ft. | | $ 71.79 /sq.ft. | | $ 98.73 /sq.ft. | |
| Data Source(s) | PHYS INSPECT. | INTEREALTY/MLS | | INTEREALTY/MLS | | INTEREALTY/MLS | |
| Verification Source(s) | DOC # | 2009070801942 | | 2009091100698 | | 2009083101787 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | N/A NONE | CONV NO SLR PTS | | CASH NO SLR PTS | | CONV NO SLR PD PTS | |
| Date of Sale/Time | N/A | 07/08/2009 | -3,176 | 09/11/2009 | -1,200 | 08/31/2009 | -3,320 |
| Rights Appraised | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Site | 5,257 SQ. FT. | 7,100 SQ. FT. | -3,000 | 7,000 SQ. FT. | -4,000 | 7,750 SQ. FT. | -4,000 |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | 1 STORY | 1 STORY | 0 | 1 STORY | | 1 STORY | |
| Quality of Construction | GOOD | GOOD | | GOOD | 0 | GOOD | |
| Age | 27 YEARS | 39 YEARS | 0 | 37 YEARS | 0 | 36 YEARS | 0 |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade Room Count (Total / Bdrms / Baths) | 6 / 2 / 2 | 6 / 3 / 2 | | 5 / 3 / 2 | | 6 / 4 / 2 | |
| Gross Living Area | 1,450 sq.ft. | 1,534 sq.ft. | 0 | 1,393 sq.ft. | 0 | 1,418 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | NONE MLS# | NONE #924173 | | NONE #965511 | | NONE #924032 | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | CENT HT/AC | CENT HT/AC | | CENT HT/AC | | CENT HT/AC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2-CAR GARAGE | 2-CAR GARAGE | | 2-CAR GARAGE | | 2-CAR GARAGE | |
| Porch/Patio/Deck | CVPCH/CVPAT | CVPCH/PATIO | +1,000 | CVPCH/CVPAT | | CVPCH/CVPAT | |
| Features | LNDSCP/FENCE | SIMILAR | | SIMILAR | | SIMILAR | |
| POOL/SPA | NO POOL/SPA | NO POOL/SPA | | NO POOL/SPA | | NO POOL/SPA | |
| FIREPLACE | NO FIREPLACE | 1 FIREPLACE | -1,500 | NO FIREPLACE | | NO FIREPLACE | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -6,676 | ☐ + ☒ - | $ -5,200 | ☐ + ☒ - | $ -7,320 |
| Adjusted Sale Price of Comparables | | Net 7.4 % Gross 9.6 % | $ 83,324 | Net 5.2 % Gross 5.2 % | $ 94,800 | Net 5.2 % Gross 5.2 % | $ 132,680 |

Summary of Sales Comparison Approach: ALL THREE SALES ARE LOCATED IN THE SUBJECTS COMPETITIVE MARKET AREA. POSITIVE AND NEGATIVE ADJUSTMENTS OF THE COMPARABLE SALES WERE REQUIRED IN AREAS OF DISSIMILARITY TO PRODUCE THE BEST INDICATED VALUE OF THE SUBJECT. SUBJECT COMPETES WELL WITH SIMILAR SIZED, AGED HOMES IN ITS COMPETITIVE MARKET AREA.

**Indicated Value by Sales Comparison Approach $** 95,000

GP RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE 3/2007

VALUATION

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 1008229

| COST APPROACH TO VALUE (if developed) | ☒ The Cost Approach was not developed for this appraisal. |

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): N/A

## COST APPROACH

| | | OPINION OF SITE VALUE | | =$ |
|---|---|---|---|---|
| ☐ ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | | DWELLING | Sq.Ft. @ $ | =$ |
| Source of cost data: N/A | | | Sq.Ft. @ $ | =$ |
| Quality rating from cost service: N/A   Effective date of cost data: N/A | | | Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | | Sq.Ft. @ $ | =$ |
| THE COST APPROACH WAS NOT PROVIDED (NOT REQUIRED FOR | | | Sq.Ft. @ $ | =$ |
| ESTATE APPRAISAL) | | | | =$ |
| | | Garage/Carport | Sq.Ft. @ $ | =$ |
| | | Total Estimate of Cost-New | | =$ |
| | | Less   Physical   Functional   External | | |
| | | Depreciation | | =$( ) |
| | | Depreciated Cost of Improvements | | =$ |
| | | "As-is" Value of Site Improvements | | =$ |
| | | | | =$ |
| | | | | =$ |
| Estimated Remaining Economic Life (if required): N/A Years | | INDICATED VALUE BY COST APPROACH | | =$   N/A |

## INCOME APPROACH

| INCOME APPROACH TO VALUE (if developed) | ☒ The Income Approach was not developed for this appraisal. |

| Estimated Monthly Market Rent $   N/A   X Gross Rent Multiplier   N/A   = $   N/A | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM):

## PUD

| PROJECT INFORMATION FOR PUDs (if applicable) | ☐ The Subject is part of a Planned Unit Development. |

Legal Name of Project:  VICTORIA VILLAS

Describe common elements and recreational facilities:  N/A

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 95,000   Cost Approach (if developed) $ N/A   Income Approach (if developed) $ N/A

Final Reconciliation   THE SALES COMPARISON APPROACH BEST INDICATES MARKET VALUE AS DEFINED IN THIS REPORT. THE COST APPROACH WAS NOT DEVELOPED FOR THIS REPORT. THE INCOME APPROACH WAS CONSIDERED BUT NOT GIVEN ANY WEIGHT AS SUBJECT MARKET IS NOT INVESTOR ORIENTED.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:  NONE. THIS IS A COMPLETE APPRAISAL/SUMMARY APPRAISAL REPORT.

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $   95,000   , as of:   OCTOBER 7, 2009   , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains   13   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☐ Narrative Addendum | ☒ Photograph Addenda | ☒ Sketch Addendum |
|---|---|---|---|---|
| ☒ Map Addenda | ☐ Additional Sales | ☐ Cost Addendum | ☐ Flood Addendum | ☐ Manuf. House Addendum |
| ☐ Hypothetical Conditions | ☐ Extraordinary Assumptions | ☒ APPRAISER LICENSE | | |

Client Contact:  STAN JOHNSON   Client Name:  CJD LAW GROUP, LLC

E-Mail:  sjohnson@cjdlawgroup.com   Address:  6293 DEAN MARTIN DRIVE, #G, LAS VEGAS, NV 89118

## SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| | Supervisory or |
| Appraiser Name:  JOHN L. GREEN, NV LIC #A.0003366-RES | Co-Appraiser Name: |
| Company:  AMERICAN HOME - RESIDENTIAL APPRAISERS, LLC | Company: |
| Phone: (702) 644-6330   Fax: (702) 644-6363 | Phone:   Fax: |
| E-Mail:  johnl@americanhome-nv.com | E-Mail: |
| Date of Report (Signature):  OCTOBER 8, 2009 | Date of Report (Signature): |
| License or Certification #:  A.0003366-RES   State:  NV | License or Certification #:   State: |
| Designation:  RESIDENTIAL APPRAISER | Designation: |
| Expiration Date of License or Certification:  8/31/2011 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection:  OCTOBER 7, 2009 | Date of Inspection: |

Copyright © 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**   Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE   3/2007

## Assumptions, Limiting Conditions & Scope of Work

VALUATION
File No.: 1008229

| | | | |
|---|---|---|---|
| Property Address: 5030 STORMY CIRCLE | | City: LAS VEGAS | State: NV  Zip Code: 89119-2244 |
| Client: CJD LAW GROUP, LLC | | Address: 6293 DEAN MARTIN DRIVE, #G, LAS VEGAS, NV 89118 | |
| Appraiser: JOHN L. GREEN, NV LIC #A.0003366-RES | | Address: 2305 HEAVENLY VIEW DRIVE, HENDERSON, NV 89014 | |

### STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS

— The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

— The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

— If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

— The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

— If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

— The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

— The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

— The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

— If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

— An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

— The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

— An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):

THE APPRAISAL IS BASED ON A BANKRUPTCY OF JUDSON W BLOUNT, SR. & JULIE R. BLOUNT. THIS APPRAISAL IS PREPARED FOR THE COURT PURPOSES TO ASSIST THE HANDLERS OF THE PROPERTY IN ESTABLISHING MARKET VALUE. THE REPORT HAS BEEN PREPARED UTILIZING A GENERAL PURPOSE FORM THAT IS A SUMMARY REPORT AND IS CONSIDERED TO BE CONCISE AND EFFECTIVE AT CONVEYING INFORMATION THAT IS TYPICALLY PRESENTED IN A SUMMARY APPRAISAL REPORT.

GP RESIDENTIAL    Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

Main File No. 1008229] Page #6

VALUATION

## Certifications

File No.: 1008229

| Property Address: 5030 STORMY CIRCLE | City: LAS VEGAS | State: NV | Zip Code: 89119-2244 |
|---|---|---|---|
| Client: CJD LAW GROUP, LLC | Address: 6293 DEAN MARTIN DRIVE, #G, LAS VEGAS, NV 89118 | | |
| Appraiser: JOHN L. GREEN, NV LIC #A.0003366-RES | Address: 2305 HEAVENLY VIEW DRIVE, HENDERSON, NV 89014 | | |

**APPRAISER'S CERTIFICATION**

I certify that, to the best of my knowledge and belief:

— The statements of fact contained in this report are true and correct.

— The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— My engagement in this assignment was not contingent upon developing or reporting predetermined results.

— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

— I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.

— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.

— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**

**DEFINITION OF MARKET VALUE \*:**

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. Buyer and seller are typically motivated;

2. Both parties are well informed or well advised and acting in what they consider their own best interests;

3. A reasonable time is allowed for exposure in the open market;

4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

\* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

| Client Contact: STAN JOHNSON | | Client Name: CJD LAW GROUP, LLC | |
|---|---|---|---|
| E-Mail: sjohnson@cjdlawgroup.com | | Address: 6293 DEAN MARTIN DRIVE, #G, LAS VEGAS, NV 89118 | |

<table>
<tr><td colspan="2"><b>APPRAISER</b></td><td colspan="2"><b>SUPERVISORY APPRAISER (if required)<br>or CO-APPRAISER (if applicable)</b></td></tr>
<tr><td colspan="2"></td><td colspan="2"></td></tr>
<tr><td colspan="2">Appraiser Name: JOHN L. GREEN, NV LIC #A.0003366-RES</td><td colspan="2">Supervisory or<br>Co-Appraiser Name:</td></tr>
<tr><td colspan="2">Company: AMERICAN HOME - RESIDENTIAL APPRAISERS, LLC</td><td colspan="2">Company:</td></tr>
<tr><td>Phone: (702) 644-6330</td><td>Fax: (702) 644-6363</td><td>Phone:</td><td>Fax:</td></tr>
<tr><td colspan="2">E-Mail: johnl@americanhome-nv.com</td><td colspan="2">E-Mail:</td></tr>
<tr><td colspan="2">Date Report Signed: OCTOBER 8, 2009</td><td colspan="2">Date Report Signed:</td></tr>
<tr><td>License or Certification #: A.0003366-RES</td><td>State: NV</td><td>License or Certification #:</td><td>State:</td></tr>
<tr><td colspan="2">Designation: RESIDENTIAL APPRAISER</td><td colspan="2">Designation:</td></tr>
<tr><td colspan="2">Expiration Date of License or Certification: 8/31/2011</td><td colspan="2">Expiration Date of License or Certification:</td></tr>
<tr><td colspan="2">Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None</td><td colspan="2">Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☐ None</td></tr>
<tr><td colspan="2">Date of Inspection: OCTOBER 7, 2009</td><td colspan="2">Date of Inspection:</td></tr>
</table>

SIGNATURES

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP** RESIDENTIAL

Form GPRES2AD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE   3/2007

## General Text Addendum

File No. 1008229

| Borrower | BLOUNT | | | | |
|---|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | | |
| City | LAS VEGAS | County | CLARK | State NV | Zip Code 89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | | |

### COMMUNITY PROFILE - LAS VEGAS, NV:

THE LAS VEGAS MSA VALLEY HAS BEEN ONE OF THE FASTEST GROWING AREAS IN THE US. AMONG ITS ATTRACTION FACTORS ARE A LOW TAX RATE, RETIREMENT COMMUNITY, AND THE LAS VEGAS CONVENTION & VISITOR BUSINESS. THE AREA INCLUDES FOUR POLITICAL ENTITIES, THE CITES OF LAS VEGAS, NORTH LAS VEGAS, HENDERSON AND THE MOST DEVELOPED PORTIONS OF UNINCORPORATED CLARK COUNTY, THE LARGEST POPULOUS COUNTY IN THE STATE WITH OVER 2 MILLION RESIDENTS AND 70% OF NEVADA'S POPULATION. THE VALLEY IS HOME TO THE WORLD FAMOUS "LAS VEGAS STRIP" THE ENTERTAINMENT CAPITAL OF THE WORLD AND SITE OF 14 OF THE NATION'S 15 LARGEST HOTELS. IN 2008, 37.5 MILLION TOURISTS VISITED LAS VEGAS, A 4.4 % DECLINE OVER 2007, WITH AN ECONOMIC IMPACT OF $42.5 BILLION, INCLUDING $10.9 BILLION SPENT ON GAMING. THERE ARE NEARLY 16,000 NEW HOTEL ROOMS PLANNED FOR COMPLETION BY THE END OF 2011, REPRESENTING A CAPITAL INVESTMENT OF $16.5 BILLION IN NEW TOURISM RELATED DEVELOPMENT, WHICH WILL SHOW AN INCREASE IN SHORT AND LONG TERM EMPLOYMENT OPPORTUNITIES.

BASED ON CURRENT ACTIVITIES AS REPORTED BY ECONOMIST, THE LAS VEGAS BOARD OF REALTORS MULTIPLE LISTING SERVICE AND COUNTY RECORDS, PRESENT TRENDS IN THE SUBJECT'S GENERAL MARKET AREA SUGGEST THAT PROPERTY VALUES HAVE DECREASED AS DEMAND IS SHORT DUE TO THE OVER SUPPLY OF HOMES ON THE MARKET. THE MARKET HAS IMPROVED BECAUSE OF THE ABOVE COMMUNITY PROFILE.  AT THE TIME OF THIS REPORT MARKETING TIME ON HOMES IN THE SUBJECT'S GENERAL COMPETITIVE MARKET AND THE SUBJECT'S VALUE RANGE IS UNDER SIX MONTHS. ACCORDING TO THE GLVAR ECONOMIC AND MARKET WATCH REPORT 2008, EXISTING HOME SALES FOR JUNE 2009 ROSE 67.4% FROM A YEAR AGO. SUBPRIME DISAPPEARED, BUT FHA AND GSE LOANS ARE MAKING A COMEBACK.  NEW HOME SALES RECORDED 9,741 IN 2008, DOWN, -49.1% FROM A YEAR AGO.  IT IS FORECASTED THAT THERE WILL BE 3,000 IN 2009, EXTREMELY LOW THROUGH 2010, AND A STEADY RECOVERY IN 2011. BUILDERS ARE BRINGING VERY FEW HOMES TO THE MARKET.  NEW HOME SALES WERE AT 426 FOR AUGUST 2009, A 57% DECREASE FROM THE PREVIOUS YEAR.  IT IS PROJECTED THAT 4,000 NEW RESIDENTIAL BUILDING PERMITS WILL BE PULLED IN 2009, 6,500 IN 2010, AND 9,000 IN 2011. IN THE GREATER LAS VEGAS AREA RESALE SINGLE FAMILY RESIDENTIAL LISTINGS ARE AT 20,999 FOR AUGUST 2009, WHICH IS 7.5% FROM A YEAR AGO.  THE RESALE MARKET CONTINUES TO ABSORB INVENTORY OF FORECLOSURES AND SHORT SALES, OR HOMES SOLD FOR LESS THAN THE MORTGAGE OWED.   THE RESALE SEGMENT OF SINGLE FAMILY RESIDENTIAL IS REGAINING STRENGTH, PER HOME BUILDERS RESEARCH.  THE TIME ON THE MARKET FOR SINGLE FAMILY RESIDENTIAL IMPROVED WITH THE MAJORITY OF THE HOMES, 68%, ARE ON THE MARKET FOR 60 DAYS OR LESS. FUTURE MARKETING TIME AND EXPOSURE WILL ALSO BE DETERMINED BY THE BALANCE OF SUPPLY AND DEMAND.  THE LAS VEGAS VALLEY RESALE INVENTORY HOLDING PERIOD AVERAGE IS AT 7.5 MONTHS FOR THE MONTH OF JULY 2009. NEW HOME INVENTORY IS AT 4.3 MONTHS. THE BANK-OWNED INVENTORY IS AT 7.2 MONTHS.  IT APPEARS THAT THE NUMBER OF HOMES ON THE MARKET ARE STABLING DUE TO THE RECENT SALES OF BANK OWNED AND FORECLOSED PROPERTIES AND HELPING ESTABLISH THE BOTTOM IN PRICES.  THEY ACCOUNT FOR ABOUT 70.5 PERCENT OF CLOSINGS IN AUGUST 2009.

LOCAL HOUSING-ANALYSIS INDICATE THAT SALES AND PRICING DATA SHOW PARALLEL LOCAL HOUSING ECONOMIES:  A STANDARD RESALE MARKET FOR EXISTING-HOME CLOSINGS THAT WERE NOT BANK-OWNED HAD A MEDIAN PRICE OF $135,500 IN AUGUST 2009, WHICH IS A 35.5% DECREASE FROM A YEAR AGO.

WITH ANNUAL APPRECIATION AVERAGING 3 TO 4 PERCENT FOR THE LAST 25 YEARS WE WOULD HAVE ROUGHLY YIELDED TODAY'S MEDIAN VALUE IN THE MARKET.  WE ARE ABOUT WHERE WE SHOULD BE IN THE OVERALL SCHEME OF THINGS.

FOR CONSUMERS, UNDERVALUATION HAS SIGNAL PURCHASING OPPORTUNITIES.  THEREFORE, IN GENERAL, REAL ESTATE IS A VERY GOOD BUY IN THE LAS VEGAS MARKET.

### SUBJECT'S CHARACTERISTICS:

THE SUBJECT IS A ONE STORY, TWO BEDROOM AND TWO BATH HOME BUILT IN 1982. THE AMENITIES INCLUDE THE FOLLOWING:   FULLY LANDSCAPED YARD WITH AUTOMATIC SPRINKLER SYSTEM, CONCRETE FENCING AT SIDES/REAR, CERAMIC TILE THROUGHOUT, CERAMIC TILE COUNTERTOPS AT KITCHEN, ALARM SYSTEM, CEILING FANS, SOFTWATER SYSTEM, MIRRORED WARDROBE DOORS, AND ONYX COUNTERTOPS AT BATHS.

## General Text Addendum

File No. 1008229

| Borrower | BLOUNT | | | | |
|---|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | | |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code | 89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | | |

### SUBJECT'S COMPARISON ANALYSIS:

REO/FORECLOSURES ARE CLOSELY TIED TO HOME PRICES - THEY TEND TO RISE AS PRICES FALL. HOME PRICES HAVE FALLEN 36.9% FROM A YEAR AGO, ACCORDING TO THE GREATER LAS VEGAS ASSOCIATION OF REALTORS. BY ADDING BANK-OWNED HOMES TO AN ALREADY SLOW MARKET FURTHER OUTSTRIPS DEMAND AND DAMPENS PRICES, CREATING A SPIRAL OF LOWER PRICES AND A HIGHER INVENTORY OF FORECLOSURES.

IT SHOULD BE NOTED THAT DISTRESSED SALES ACCOUNTED FOR 86% OF CLOSED SALES FOR THE MONTH OF MARCH. SALES HAD A 39.6% INCREASE FROM FEBRUARY 2009. FORECLOSURES ARE PUTTING DOWNWARD PRESSURE ON HOME PRICES.

THEREFORE, A TIME ADJUSTMENT WAS MADE OF MINUS -0.012% PER MONTH, WHICH REPRESENTS THE VALUE, IN THE SUB-MARKET, THAT HAS DIMINISHED IN THE DECLINING MARKET.

AN EFFORT WAS MADE TO UTILIZE SALES THAT WERE PROXIMATE, RELATIVELY RECENT, SIMILAR IN AGE AND SIZE, AND SIMILAR IN GENERAL DESCRIPTION. THE 3 COMPARABLES UTILIZED BRACKET THE SUBJECT IN MOST ASPECTS.

THE APPRAISER IS AWARE OF THE ACROSS THE BOARD ADJUSTMENTS FOR TIME OF ADJUSTMENT (SEE ABOVE) AND SIZE OF SITE. THIS IS DUE TO THE VERY LIMITED SALES DATA AVAILABLE FOR THESE AMENITIES. THE APPRAISER WAS FORCED TO USE THE SELECTED SALES AND FEEL THEY ARE THE BEST INDICATORS IN VALUE AND MOST COMPARABLE TO THE SUBJECT. THE COMPARABLE SALES USED WERE ADJUSTED TO REFLECT THE MARKET'S REACTION TO THE VARIABLE.

THE SUBJECT IS LOCATED ON A CUL-DE-SAC STREET. THERE IS NO ADVERSE OR POSITIVE AFFECT TO VALUE OR MARKETABILITY DUE TO THIS OCCURANCE.

### CORRELATION:

WITH MOST CONSIDERATION PLACED ON THE SALES COMPARISON, WE HAVE CORRELATED THE FINAL MARKET VALUE FOR THE SUBJECT PROPERTY AT $95,000, WHICH INDICATES $65.52 PER SQUARE FOOT OF LIVING AREA, WHICH IS WITHIN THE RANGE AS INDICATED BY THE SALES IN THIS REPORT.

IT SHOULD BE NOTED THAT THE APPRAISER WAS LIMITED IN THE NUMBER OF COMPARABLES THAT WERE SIMILAR TO THE SUBJECT IN GROSS LIVING AREA, LOCATION, AND THAT WERE NOT BANKED OWNED PROPERTIES. THIS IS DUE TO THE AMOUNT OF CLOSED SALES, IN THE MARKET PLACE, THAT HAVE BEEN A SHORT SALE, FORECLOSURE, OR NOT A ARMS LENGTH TRANSACTION.

THE APPRAISER FEELS THAT THE COMPARABLE SALES USED WERE THE BEST AVAILABLE TO SUPPORT THE ESTIMATED MARKET VALUE DERIVED.

ALL SALES WERE REPORTED CLOSED WITH CASH TO SELLER AND TYPICAL FINANCING. THE REPORTED DISCOUNT POINTS BEING PAID BY THE SELLER IS TYPICAL IN THE MARKET AND HAS NO AFFECT ON VALUE.

IN THE PREPARATION OF THIS REPORT I HAVE RELIED ON DATA FROM COUNTY RECORDS, MULTIPLE LISTING SERVICE AND TITLE COMPANIES, ETC. I BELIEVE THIS REPORT TO BE COMPLETE AND ACCURATE; HOWEVER, SHOULD ANY ERROR OR OMISSION BE SUBSEQUENTLY DISCOVERED, I RESERVE THE RIGHT TO CORRECT IT.

**Location Map**

| Borrower | BLOUNT | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | | | | |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code | 89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | | | | |



**Plat Map**

| Borrower | BLOUNT | | | |
|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | |
| City | LAS VEGAS | County  CLARK | State  NV | Zip Code  89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | |



## Building Sketch (Page - 1)

| Borrower | BLOUNT | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | | | | |
| City | LAS VEGAS | County | CLARK | State | NV | Zip Code | 89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | | | | |



PERIMETER SKETCH AND CALCULATIONS
FLOOR PLAN NOT TO SCALE

**Area Calculations Summary**

| Living Area | | Calculation Details | | |
|---|---|---|---|---|
| First Floor | 1513 Sq ft | 33 × 33 | = | 1089 |
| | | 14 × 14 | = | 196 |
| | | 4 × 3 | = | 12 |
| | | 5 × 8 | = | 40 |
| | | 22 × 8 | = | 176 |
| ATRIUM | -63 Sq ft | 7 × 9 | = | 63 |
| Total Living Area (Rounded): | 1450 Sq ft | | | |
| Non-Living Area | | | | |
| 2 Car Garage | 380.4 Sq ft | 8 × 3.2553 | = | 26.0424 |
| | | 18.7447 × 18.8052 | = | 352.49783244 |
| | | 0.5 × 18.7447 × 0.1948 | = | 1.82573378 |
| COVERED PORCH | 20 Sq ft | 4 × 5 | = | 20 |
| COVERED PATIO | 300 Sq ft | 10 × 30 | = | 300 |

Main File No. 1008229| Page #12

**Generic Map**

| | |
|---|---|
| Borrower | BLOUNT |
| Property Address | 5030 STORMY CIRCLE |
| City | LAS VEGAS, | County CLARK | State NV | Zip Code 89119-2244 |
| Lender | CJD LAW GROUP, LLC |

# APPRAISER LICENSE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

### NOT TRANSFERABLE        REAL ESTATE DIVISION        NOT TRANSFERABLE

This is to Certify That: JOHN L GREEN          License Number: A.0003366-RES

Is duly authorized to act as a LICENSED RESIDENTIAL APPRAISER from the issue date to the expiration date at the business address stated here in, unless the license is sooner revoked, cancelled, withdrawn, or invalidated.

Issue Date: August 11, 2009          Expire Date: August 31, 2011

In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in it by Chapter 645C of the Nevada Revised Statues, has caused this license to be issued with its Seal printed thereon. This license must be conspicuously displayed in place of business.

FOR:    AMERICAN HOME - RESIDENTIAL          REAL ESTATE DIVISION
APPRAISERS
2305 HEAVENLY VIEW DR
HENDERSON, NV 89014

GAIL J ANDERSON
*Administrator*

Form MAP Generic — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Subject Photo Page

| Borrower | BLOUNT | | | | |
|---|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | | |
| City | LAS VEGAS | County | CLARK | State NV | Zip Code 89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | | |



### Subject Front

5030 STORMY CIRCLE

| | |
|---|---|
| Sales Price | VALUATION |
| Gross Living Area | 1,450 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 5,257 SQ. FT. |
| Quality | GOOD |
| Age | 27 YEARS |



### Subject Rear



### Subject Street

## Comparable Photo Page

| Borrower | BLOUNT | | | |
|---|---|---|---|---|
| Property Address | 5030 STORMY CIRCLE | | | |
| City | LAS VEGAS | County CLARK | State NV | Zip Code 89119-2244 |
| Lender | CJD LAW GROUP, LLC | | | |



### Comparable 1
5377 CLYDESDALE STREET
| | |
|---|---|
| Prox. to Subject | .47 MILES SOUTHEAST |
| Sale Price | 90,000 |
| Gross Living Area | 1,534 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 7,100 SQ. FT. |
| Quality | GOOD |
| Age | 38 YEARS |



### Comparable 2
5595 OXBO STREET
| | |
|---|---|
| Prox. to Subject | .72 MILES SOUTH |
| Sale Price | 100,000 |
| Gross Living Area | 1,393 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 7,000 SQ. FT. |
| Quality | GOOD |
| Age | 37 YEARS |



### Comparable 3
5575 OXBOW STREET
| | |
|---|---|
| Prox. to Subject | .69 MILES SOUTHWEST |
| Sale Price | 140,000 |
| Gross Living Area | 1,418 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | RESIDENTIAL |
| Site | 7,750 SQ. FT. |
| Quality | GOOD |
| Age | 36 YEARS |

# EXHIBIT 2

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA | PROOF OF CLAIM 13 |
|---|---|

Name of Debtor
**Julie R. Blount**

Case Number
**10-11424-bam**

(This space for court use)

NOTE: This form should NOT be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. Section 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property)

**Wells Fargo Bank, N.A.**

Name & address where notices and payments should be sent:
Wells Fargo Bank, N.A.
One Home Campus, MAC= X2502-045
Des Moines, IA 50328

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

Account reference by which creditor identifies debtor:
5030 Stormy Circle
Las Vegas, NV 89119
T&B File No. 10-70740

Check here if this claim
☐ replaces ☐ amends   a previously filed claim, dated

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
X Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other

☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
☐ Wages, salaries, and compensation (FILL OUT BELOW)
Your Social Security #_____-____-_____
Unpaid compensation for services performed from
(date)_____ To_____ (date)

**2. Date debt was incurred:** October 3, 2002

**3. If court judgment, date obtained:**

**4. Total amount of claim at time case filed: $95,620.85**
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach an itemized statement of all interest or additional charges.

**5. Secured Claim.**
X Check this box if your claim is secured by collateral (including a right of setoff).

Brief description of collateral:
X Real Estate   ☐ Motor Vehicle
☐ Other

Amount of arrearages and other charges at time case filed included in secured claim, if any:

**$6,873.88\***
\* Arrearages, as set forth in Schedule "A" attached Plus accruing interest, late charges.

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim.
Amount entitled to priority $
Specify the priority of the claim:
☐ Wages, salaries, or commissions up to $4,650\* earned within 90 days before filing of the bankruptcy petition, or cessation of the debtor's business, whichever is earlier- 11 U.S.C. §507(a)(3)
☐ Contributions to an employee benefit plan.- 11 U.S.C. § 507(a)(4)
☐ Up to $2,100\* of deposits toward purchase, lease or rental of property Or services for personal, family or household use- 11 U.S.C. § 507(a)(6)
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child- 11 U.S.C. § 507(a)(7)
☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8)
☐ OTHER-Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
\*Amounts are subject to adjustment on 4/1/98 and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**8. Supporting documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain  If the documents are voluminous, attach a summary.
**9. Date-Stamped copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and a copy of this proof of claim.

(This space for court use)

Date: February 23, 2010

WILDE & ASSOCIATES, counsel for creditor

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571

EXHIBIT "A"

Julie R. Blount
CASE NO: 10-11424-bam

## SCHEDULE "A"

PRINCIPAL BALANCE $95,620.85

ARREARAGES

| | |
|---|---:|
| Monthly payments 6 @ $785.18 (Aug 09 - Jan 10) | $4,711.08 |
| Attorney foreclosure expense | $676.88 |
| Attorney fees | $487.50 |
| Property Inspection | $15.00 |
| Escrow shortage | $741.05 |
| Accrued late fees | $197.37 |
| Property preservation | $45.00 |
| TOTAL* | $6,873.88 |

*TOTAL GOOD THROUGH January 29, 2010

***NOTE: THE TOTAL DEBT IS THE SUM OF THE ARREARAGES AND THE PRINCIPAL BALANCE, LESS ANY PORTION OF THE ARREARAGES WHICH UNDER THE TERMS OF THE LOAN WOULD BE APPLIED AS A REDUCTION OF THE PRINCIPAL.

20021023
.00495

Recording Requested By:
FIRST MAGNUS FINANCIAL CORP., dba CHARTER FUNDING

Assessor's Parcel Number:
162-26-516-002

Mail Tax Statements To:
FIRST MAGNUS FINANCIAL CORP., dba CHARTER
FUNDING
5285 E WILLIAM CIRCLE, #2000
TUCSON, AZ 85711

LOAN NO.: 8405004829
ESCROW NO.: 02175329-ATB

MIN 100039284050048290
MERS Phone: 1-888-679-6377



---[Space Above This Line For Recording Data]---

| FHA Case No. |
|---|
| 332-3976919-703 |

State of Nevada

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on     OCTOBER 03, 2002
The Grantor is
JUDSON W BLOUNT, AN UNMARRIED MAN. JULIE R BLOUNT, AN UNMARRIED WOMAN

("Borrower"). The trustee is
UNITED TITLE OF NEVADA

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

("Lender") is organized and existing under the laws of       ARIZONA       , and
has an address of
5285 EAST WILLIAMS CIRCLE, SUITE 2000, TUCSON, AZ 85711
Borrower owes Lender the principal sum of
ONE HUNDRED FIVE THOUSAND NINE HUNDRED SIXTY SIX AND NO/100 X X X X X X X X X X X X X X

Dollars (U.S. $     105,966.00     ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   NOVEMBER 01, 2032   .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

20021028
.00495

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in                                                  CLARK                                          County, Nevada:

LOT EIGHTEEN (18) IN BLOCK ONE (1) OF VICTORIA VILLAS SUBDIVISION NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 27 OF PLATS, PAGE 83, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL NO.:   162-26-516-002

which has the address of                          5030 STORMY CIRCLE                                    [Street]
                LAS VEGAS                          [City], Nevada      89119      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

VMP-4N(NV) (3101)                                Page 2 of 8

200210028
.00495

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

VMP-4N(NV) (0107)                    Page 3 of 8

20021028
.00495

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

    (a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

200210Z8
.00495

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

VMP-4N(NV) (0107)                     Page 5 of 8

20021028
.00495

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

VMP-4N(NV) (9107)                    Page 6 of 8

20021028
.00495

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's selection to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $

22. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Growing Equity Rider
☐ Graduated Payment Rider   ☐ Planned Unit Development Rider   ☐ Rehabilitation Loan Rider
☐ Other(s) [specify]

VMP-4N(NV) (9177)          Page 7 of 8

20021028
.00495

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____ (Seal)        _____ (Seal)
JUDSON W BLOUNT SR.          -Borrower        JULIE A BLOUNT          -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                        -Borrower

STATE OF  NEVADA
COUNTY OF  Clark

This instrument was acknowledged before me on  16th  Oct 2002                          by
JUDSON W BLOUNT SR., JULIE R BLOUNT

My Commission Expires:

VMP-4N(NV) 10101                                Page 8 of 8

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
JENNIFER L. REEVES
No. 4*1684-1
My Appointment Expires April 11, 2006

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF: UNITED TITLE OF NEVADA
10-28-2002   08:52   ST1   PAGE COUNT:  8
OFFICIAL RECORDS
BOOK/INSTR:20021028-03495          FEE:   21.03
RPTT:   .03



# FIRST MAGNUS FINANCIAL CORPORATION

## Doc Follow-Up Letter



DATE:    11/18/02    11·26·02
TO:        WELLS FARGO HOME MORTGAGE, INC.

First Magnus Financial Corporation
5285 E Williams Circle Suite 2000
Tucson, AZ 85711

BORROWER:    BLOUNT, JUDSON

LOAN TYPE:    FHA
LOAN #:        8405004829

---

## ENCLOSED

☐    Recorded Assignment

☑    Recorded Deed of Trust

☐    Final Title Policy

☐    PMI/MIC/LGC

☐    Other

☐    Other

☐    Other

First Magnus Financial Corporation
PHONE: (520) 745-5100  FAX: (520) 745-5551
5285 E Williams Circle Suite 2000, Tucson, AZ 85711

*1622207*

MIN 100039284050048290
MERS Phone: 1-888-679-6377
Multistate

**NOTE**

LOAN NO.: 8405004829

FHA Case No.
332-3976919-703

OCTOBER 03, 2002
[Date]

5030 STORMY CIRCLE, LAS VEGAS, NV  89119
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED FIVE THOUSAND NINE HUNDRED SIXTY SIX AND NO/100 X X X X X X X X X X X X X
Dollars (U.S. $    105,966.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of    SIX   AND 000/1000THS
percent (    6.000    %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on DECEMBER, 2002    . Any principal and interest remaining on the first day of    NOVEMBER, 2032    , will be due on that date, which is called the "Maturity Date."

(B)  Place
Payment shall be made at  FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
5285 EAST WILLIAMS CIRCLE, SUITE 2000, TUCSON, AZ  85711    or at such place as Lender may designate in writing by notice to Borrower.

(C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $    635.32    . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other (specify)

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - 10/95
VMP-1R (9601) 02

Page 1 of 2

LENDER SUPPORT SYSTEMS INC. NOTEDG.NEW (06/02)

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000THS    percent (    4.000    %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
JUDSON W BLOUNT SR.        -Borrower      JULIE R BLOUNT        -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                             -Borrower

WITHOUT RECOURSE,
PAY TO THE ORDER OF
Wells Fargo Home Mortgage, Inc.
FIRST MAGNUS FINANCIAL CORPORATION, Inc
an Arizona Corporation
BY: Mary Lou Callahan
Mary Lou Callahan, Senior Funder

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Home Mortgage, Inc.

By Angela R. Oedson
Angela R. Oedson
Assistant Secretary